UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/28/2025
```

KARIM H. KAMAL,

                      Plaintiff,

          -v-

RAGHBIR SINGH, UBER TECHNOLOGIES, INC. and AMERICAN TRANSIT INSURANCE COMPANY,

                      Defendant.

**MEMORANDUM AND ORDER**

23-CV-05498 (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

*Pro se* plaintiff Karim Kamal ("Kamal") brought this action against defendants Raghbir Singh ("Singh"), American Transit Insurance Company ("American Transit"), and Uber Technologies, Inc. ("Uber") for property damage and personal injury allegedly resulting from a motor vehicle accident. Before the Court is Uber's motion for summary judgment that it is not liable for the accident. For the reasons described below, Uber's motion for summary judgment is **GRANTED.**

I.    BACKGROUND

    A.    **Factual Background**

This case arises from a November 25, 2022 car accident near the intersection of Carmine Street and Sixth Avenue in Manhattan. *See* Complaint ¶ 5–13, ECF No. 1; Rule 56.1 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("Uber Rule 56.1 Statement") ¶ 2, ECF No. 42-2. Singh is a professional driver who, on the day of the collision, provided approximately five rides through the driver version of the Uber Application

1

(hereafter the "Driver App"). *See* Uber Discovery Response at 4, ECF No. 47-1. Between rides, at approximately 9:30 p.m., Singh stopped to purchase a slice of pizza. *See* ECF No. 42-2; Transcript of Raghbir Singh ("Singh Tr.") 17:21–18:3, ECF No. 42-29. When he exited the car, Singh "didn't park his vehicle properly and left [the] vehicle in drive." *See* MV-104 Motor Vehicle Accident Report, ECF No. 42-30.[1]

When Singh returned from the pizza shop, his car "wasn't there." Singh. Tr. 17:21–18:3. Plaintiff, who was seated in his parked car, avers that the unmanned vehicle "plowed into the passenger side of [his] car and continued on into the oncoming 6th Avenue traffic." Plaintiff's Memorandum of Law in Opposition ("Plaintiff Mem.") at 2, ECF No. 46. The collision allegedly resulted in damage to Kamal's vehicle and personal injuries in excess of $150,000.00. *See* Complaint ¶ ¶ 4, 12. American Transit was Singh's insurance carrier at the time of the collision. *See* Singh Tr. 46:19–25.

B.     **Procedural Background**

Kamal commenced this action on June 28, 2023, suing Singh, American Transit, and Uber. *See generally* Complaint. Kamal alleged that the collision was caused by Singh's reckless, careless, grossly negligent and irresponsible use and operation of his vehicle. *Id.* ¶ 12. Kamal further alleged that at the time of the accident, approximately 9:30 p.m., Singh was "working for and was on duty for"

---

[1] This description comes from an accident report completed by Singh on November 29, 2022, which he then sent to his insurer, American Transit. Singh Tr. 60:19–61:11. The police did not investigate at the scene. *See* MV-104 Motor Vehicle Accident Report.

2

Uber. *See id.* ¶¶ 1, 19.  Singh's status on the Driver App was listed as 'open' at 9:26 p.m., and as 'offline' at 9:34 p.m.  Uber Discovery Response at 1, ECF No. 47-1.

On September 22, 2023, Uber filed its Answer, asserting as a defense that it could not be held vicariously liable because Singh was "responsible for his own means and methods" of employment.  Uber Answer to Complaint ("Uber Answer"), ECF 11, at 7.  Uber also filed crossclaims against American Transit and Singh for indemnification and apportionment.  Uber Answer at 8–9.[2]

Uber filed its Motion for Summary Judgment on April 4, 2025.  ECF No. 43. Uber contends that it cannot be held liable as a matter of law and denies any vicarious liability because Singh was never Uber's employee.  Memorandum of Law in Support of Uber's Motion ("Uber Mem.") at 1, ECF No. 42.  In support of its motion, Uber submitted a memorandum of law, a declaration of Ben Carroll, Uber's Senior Manager of Corporate Business Operations, a transcript of Singh's deposition and various exhibits including Singh's driver's license and proof of registration, the accident report, and Uber's Platform Access Agreement ("PAA"), nearly two dozen state court decisions, and a Rule 56.1 statement.  ECF Nos. 42–43. On May 19, 2025, Plaintiff filed his opposition and supporting declaration, but no counter-Rule 56.1 Statement.  ECF Nos. 46–47.  On June 9, 2025, Uber filed its reply in support of its motion.  ECF No. 50.

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge on November 16, 2023.  ECF No. 16.  The case was reassigned to the undersigned on September 5, 2024.

Local Civil Rule 56.2 outlines specific requirements for a represented party seeking summary judgment against a party proceeding *pro se*, as Kamal is here. It required Uber to serve a copy of the "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" along with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1. Uber did not do so. When an adversary of a *pro se* litigant "fails to give such notice, the court is required to provide it." *Irby v. New York City Transit Authority*, 262 F.3d 412, 414 (2d Cir. 2001).

The undersigned entered an Order providing the required notice on August 25, 2025, which instructed Plaintiff to file a supplemental opposition to Uber's motion for summary judgment with a Counterstatement of Material Facts pursuant to Local Civil Rule 56.1 by September 8, 2025. *See* Order with Respect to Motion for Summary Judgment ("Aug. 25 Order"), ECF No. 51. This Order warned that each numbered paragraph in Uber's Statement of Material Facts, *see* Ex. 2 to Uber Mem., would be deemed admitted unless Plaintiff provides a counterstatement that "specifically denie[d] and controvert[ed] such paragraph with citations to admissible evidence." Aug. 25 Order at 2. Plaintiff filed his counterstatement on September 8. *See* Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment: Counterstatement of Material Facts ("Kamal Rule 56.1 Counterstatement") at 2, ECF No. 52.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure "allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim(s) or defense(s) are undisputed and that those facts entitle the party to the judgment

sought." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (cleaned up). To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18-CV-1047, 2024 WL 1195575, at *11 (S.D.N.Y. Mar. 20, 2024) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)). To establish that there is no genuine issue of material fact, a moving party may either "submit[ ] evidence that negates an essential element of the non-moving party's claim, or . . . demonstrat[e] that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Syville v. City of New York*, No. 20-CV-4633, 2022 WL 16541162, at *5 (S.D.N.Y. Oct. 28, 2022) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).

The court is "required to view the evidence in the light most favorable to the party opposing summary judgment [and] to draw all reasonable inferences in favor of that party." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, the non-moving party must provide "hard evidence . . . from which a reasonable inference in [its] favor may be drawn." *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020) (cleaned up). In other words, the nonmoving party "must produce admissible

evidence that supports its pleadings." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-CV-6711, 2021 WL 4479576, at *3 (S.D.N.Y. Sept. 30, 2021) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968)). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), are insufficient to create a genuinely disputed fact.

## III.  ANALYSIS

Uber raises two arguments in its motion. First, it argues that it cannot be held vicariously liable for Singh's actions because Singh was not an employee of Uber. *See* Uber Mem. at 1. Second, Uber argues that it cannot be held directly liable under a theory of negligent ownership or operation of the vehicle. Uber Mem. at 18. The Court addresses each in turn.

### A.  Uber Cannot Be Held Vicariously Liable Because Singh Was Not Employed by Uber

"The doctrine of *respondeat superior* renders [an employer] vicariously liable for a tort committed by his or her [employee] within the scope of employment." *Perez v. NES Med. Servs. of N.Y., P.C.*, 203 A.D.3d 1089, 1090 (2d Dep't 2022) (cleaned up).[3] Under this doctrine, "the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally

---

[3] Where jurisdiction is premised on diversity and the parties have both presented arguments based on the law of the forum state, the Court can apply New York law without conducting a further choice of law inquiry. *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 278 (S.D.N.Y. 2022).

foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999). In contrast, one who hires an independent contractor is generally not liable for that contractor's negligent acts. *Kleeman v. Rheingold*, 81 N.Y.2d 270, 273 (1993). This is because an alleged employer does not "exercise sufficient control over [an independent contractor's] work to give rise to their liability under the doctrine of *respondeat superior*." *Barak v. Chen*, 87 A.D.3d 955, 957 (2d Dep't 2011).

Uber argues that it had no employment relationship with Singh because he was an independent contractor. *See* Uber Mem. at 1. The existence of an employment relationship, as opposed to an independent contractor relationship, turns on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).

To assess control, courts analyze whether the worker (1) worked at their own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule. *Bynog*, 1 N.Y.3d at 198. "Control of the method and means by which the work is to be done is the critical factor in determining whether one is an independent contractor or an employee for purposes of tort liability." *Sanabria v. Aguero-Borges*, 117 A.D.3d 1024, 1025 (2d Dep't 2014). Minimal or incidental control over work product "without supervision or input over the means used to complete the work is

7

insufficient to establish a traditional employment relationship." *Meehan v. Cnty. of Suffolk*, 144 A.D.3d 650, 641 (2d Dep't 2016) (cleaned up).

While this is usually a question reserved for the jury, summary judgment is appropriate "where the proof on the issue of control presents no conflict in evidence." *Williams v. Boulevard Lines, Inc.*, No. 10-CV-2924, 2013 WL 1180389, at *6 (S.D.N.Y. Mar. 12, 2013).

### 1. Uber Established Its *Prima Facie* Entitlement to Summary Judgment by Showing that Singh Is An Independent Contractor

Uber submitted evidence showing that it does not exercise sufficient control over Singh's work for him to be categorized as an employee of Uber. If not contested, this evidence would demonstrate, as a matter of law, that Uber cannot be held liable for Singh's alleged negligence under the doctrine of *respondeat superior*.

As to the first and fifth *Bynog* factors (whether a party works at their own convenience, or is employed on a fixed schedule), *see* 1 N.Y.3d at 198, Uber made a showing that it did not control Singh's conduct by deciding when and where he worked. Singh worked at his own convenience, determining "when, where and for how long he could utilize" the Driver App. *See* Uber Rule 56.1 Statement ¶ 9. He was "free to go online and offline as he saw fit[.]" *Id.*; *see* Singh Tr. 64:24–65:5. He also had the discretion to "accept or decline a trip request." Uber Rule 56.1 Statement ¶ 10; *see* Singh Tr. 65:6–10.

Uber also offered evidence that Singh was able to engage in other employment, the second *Bynog* factor. Singh was "free to use other lead generation

8

services" and to "engage in any other business or employment activities." Uber Rule 56.1 Statement ¶ 10. In fact, he testified that he sometimes used other rideshare apps in addition to Uber and did so without any restriction. *See* Singh Tr. 67:10–21.

The third and fourth *Bynog* factors also point to Singh being an independent contractor. Uber demonstrated that it does not provide Singh with "fringe benefits" such as "health insurance, retirement benefits or vacation." Uber Rule 56.1 Statement ¶ 10; *see* Singh Tr. 69:17–19. Further, "Uber did not pay Mr. Singh a wage or a salary." Uber Rule 56.1 Statement ¶ 11. Instead, Uber issued him a 1099 tax form, and Singh was "responsible for paying taxes on the money he earns." Uber Rule 56.1 Statement ¶ 21; *see also* Uber Platform Access Agreement at 38, Ex. 28 to Uber Mem.

In addition to these factors, state appellate courts have found similarly situated defendants entitled to judgment as a matter of law when evidence showed that drivers "owned and maintained their own vehicles, paid for their own automobile insurance . . . [and] had discretion to reject dispatches[.]" *Barak*, 87 A.D.3d at 957. The First Department similarly affirmed a finding of a driver as an independent contractor where a driver "was responsible for his own vehicle, its maintenance, gas, and other needs, and was not required to accept any particular dispatch." *Alves v. Petik*, 136 A.D.3d 426 (1st Dep't 2016).

The presence of each of these additional factors further supports Uber's entitlement to judgment as a matter of law. Singh owned and maintained his own vehicle. *See* Uber Rule 56.1 Statement ¶ 2 ("Mr. Singh was the registered owner of

9

subject vehicle."); Certified Title and Registration Records, Ex. 34 to Uber Mem. Uber did not pay for maintenance, inspection or gas. *See* Uber Rule 56.1 Statement ¶ 12; *see* Singh Tr. 69:21–70:2. Singh was responsible for procuring his own automobile insurance. *See* Singh Tr. 46:19–25. Finally, Singh could "accept or decline a trip request at his discretion." Uber Rule 56.1 Statement ¶ 10; *see also* Declaration of Ben Carroll ("Carroll Dec.") ¶ 19, Exhibit V to Uber Mem.

Taken together, these facts constitute a *prima facie* showing by Uber that Singh was an independent contractor, rather than an employee. Confirming this conclusion, Uber cites multiple state court decisions finding as a matter of law that its drivers are independent contractors. *See, e.g.*, *Masi v. Khatiwada*, No. 716403/2019, 2025 WL 2945239 (Sup. Ct. N.Y. Cnty. Jan. 21, 2025); *Bongiovi v. Pulla*, 83 Misc.3d 1204(A) (Sup. Ct. N.Y. Cnty. 2024); *Garrett v. Capozzoli*, No. 158463/2013, 2018 WL 1794738 (Sup. Ct. N.Y. Cnty. Apr. 16, 2018).

> 2. **Plaintiff Fails to Identify a Genuine Dispute of Material Fact as to Singh's Status as an Independent Contractor**

Remarkably, Kamal's opposition brief fails to address Uber's core argument that Singh is an independent contractor or to identify admissible evidence raising a genuine issue of material fact as to this question, as is his burden in opposing the instant motion. Instead, Plaintiff advances arguments, discussed below, that miss the point of Uber's motion entirely.

### a.   Whether Singh Was Logged into the Driver App is Not Relevant to His Status as an Independent Contractor

Plaintiff argues that summary judgment should be denied because there is a genuine issue of material fact as to whether Singh was logged into the Driver App at the time of the accident.  *See* Plaintiff Mem. at 6.  This argument, which is the focus of Kamal's opposition brief, is a complete non-sequitur.  It appears directed to arguments that Uber made *in a different litigation*, but it completely ignores the *prima facie* case for summary judgment that Uber has advanced *here*.

In support of his argument, Plaintiff cites *Uy v. Hussein*, which denied summary judgment in Uber's favor because there was a genuine issue of material fact as to whether a driver was logged off the Driver App.  186 A.D.3d 1567, 1569 (2d Dep't 2020).  The problem for Kamal is that *Uy* did not address the question that is relevant here, *i.e.*, whether the driver was an independent contract or an employee.  This is because Uber presented a different argument for summary judgment in the *Uy* case:  Uber argued that it could not be held liable because the driver "was not acting within the scope of any alleged employment with [Uber] when the incident occurred." *Id.*  Thus, Uber did not dispute in that case that the driver was an employee and the *Uy* court had no occasion to address whether the driver was an employee.

Given the issue presented in *Uy*, the court found there was a genuine issue of material fact as to whether the driver was logged into the Driver App, and that factual dispute precluded summary judgment because Uber's evidentiary showing was "insufficient, without more, to eliminate all questions of fact as to whether [the

11

driver] was acting *within the scope of his alleged employment* with Uber[.]." *Id.* at 1570 (emphasis added). The question addressed in *Uy*—whether a party is acting within the scope of employment—is only relevant if there is an employment relationship. *See, e.g.*, *Phillips v. Uber Techs., Inc.*, No. 16-CV-295, 2017 WL 2782036, at *5 (S.D.N.Y. June 14, 2017) (conducting a scope of employment analysis only after "assuming that [the driver was] an employee of Uber"). The thrust of Uber's motion is that there is no employment relationship here.

Plaintiff also relies on, *Linzy v. Uber Techs., Inc.*, No. 21-CV-05097, 2023 WL 7302643, at *6 n.9 (S.D.N.Y. Nov. 6, 2023), *reconsideration denied,* 2024 WL 2882186 (June 7, 2024). But in *Linzy*, the court declined to "determine whether [the driver] was an employee or independent contractor" because "Uber did not move for summary judgment on that basis." *Id.* Instead, the court analyzed whether the driver was acting within the scope of his employment. *Id.* Thus, the *Linzy* decision itself explains why it is inapposite here, where Uber bases it motion on an evidentiary showing that Singh *was not an employee*.

Indeed, even assuming that Singh *was* logged into the Driver App at the time of the accident, this would not undermine his status as an independent contractor. Uber describes its Driver App as providing "a connection to users looking for rides and to facilitate payment with users to offer rides or other services[,]" Uber Rule 56.1 Statement ¶ 5, a description Plaintiff does not contest. In other words, the Driver App functions as a dispatching mechanism, which provides only minimal or incidental control over Singh's work product. *See Castro-Quesada v. Tuapanta*, 148

12

A.D.3d 978, 979–80 (2d Dep't 2017) (finding that a livery company "in the business of dispatching for-hire vehicles . . . established, *prima facie*, that it did not exercise sufficient control to give rise to liability under the doctrine of *respondeat superior*"); *see also Alves*, 136 A.D.3d at 426 (holding that the presence of a dispatcher, *inter alia*, is insufficient to raise an issue of fact if there is a *prima facie* showing of independent contractor status); *Chaouni v. Ali*, 150 A.D.3d 424 (1st Dep't 2013) (same); *Barak*, 87 A.D.3d at 957 (same). At most, the presence of a dispatcher "is indicative of mere incidental or general supervisory control that does not rise to the level of an employer-employee relationship." *Alves*, 136 A.D.3d at 426. In short, by focusing on whether Singh was logged on to the Driver App, Kamal shoots at the wrong target. In the process, he fails to rebut the argument Uber advances here: that Singh was an independent contractor, not an employee.

### b. Arguments Raised in Plaintiff's Counterstatement of Material Facts Fail on Both Procedural and Substantive Grounds

Read liberally in his favor, Plaintiff's Counterstatement of Material Facts makes two additional arguments in opposition to Uber's motion for summary judgment. The first of these arguments concerns Uber's use of its logo on "Uber cars," and the second denies that Kamal is bound by the contracts between Singh and Uber. These arguments fail to raise a genuine issue of material fact.[4]

---

[4] Kamal's counterstatement also reiterates his core argument that summary judgment should be denied because "there is a triable question of fact as to whether Raghbir Singh was in the course and scope of his employment with Uber when the accident occurred." ECF No. 52 at 2.

13

### i. The Uber Logo

Kamal's counterstatement asserts, "UBER'S Name is prominently displayed on all of their cars to communicate with their customers that any car in question is in fact an UBER car." ECF 52 at 2. The counterstatement then describes various lighting systems that Uber uses and includes multiple photos of cars with Uber logos. Kamal Rule 56.1 Counterstatement at 3–5.

To start, Kamal's argument is procedurally improper. The purposes of a Rule 56.1 counterstatement are "to advise the Court as to whether the specific fact asserted by the moving party is or is not disputed, and if it is disputed, to provide the Court with the evidence on which the non-moving party relies to dispute that particular fact." *Tripathy v. McCloskey*, No. 21-CV-6584, 2024 WL 2135623, at *2 (S.D.N.Y. May 13, 2024). It may not "include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important[.]" *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020). Finally, because a Rule 56.1 Counterstatement is "not argument . . . [it] should not contain conclusions." *Allen v. Koenigsmann*, No. 23-CV-5651, 2024 WL 403113, at *3 (S.D.N.Y. Feb. 2, 2024) (cleaned up).

Kamal made these counterstatements about the Uber logo in response to Uber's statement that "the Certified Title and Registration records for the vehicle driven by Singh confirm that Mr. Singh, himself, was the registered owner of the subject vehicle." Kamal Rule 56.1 Counterstatement at 2. Kamal's counterstatement is not responsive to Uber's statement. Rather, it impermissibly

14

"interject[s] arguments and/or immaterial facts . . . rather than directly responding to those assertions[.]" *Herman v. Town of Cortlandt, Inc.*, No. 18-CV-2440, 2023 WL 6795373, at *1 n.2 (S.D.N.Y. Oct. 13, 2023) (cleaned up).

Even if construed to be responsive to Uber's statement that Singh, not Uber, is the registered owner of the vehicle in question, Kamal's response would be inadequate because an opposition to summary judgment must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations[.]" Fed. R. Civ. P. 56(c)(1)(A). Kamal's argument regarding the Uber logo is not supported by any such evidence. While submissions by *pro se* plaintiffs are to be interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), this does not "excuse a *pro se* litigant from making the showing required to defeat" summary judgment. *Keesh v. Quick*, No. 19-CV-8942, 2022 WL 2160127, at *4 (S.D.N.Y. June 15, 2022). Even a *pro se* party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." *Ferguson v. City of New York*, No. 23-1315-CV, 2025 WL 1793890, at *1 (2d Cir. June 30, 2025) (cleaned up).

Even ignoring these procedural defects, Kamal's argument is insufficient to overcome Uber's *prima facie* showing. Kamal's statement that Uber's name is "prominently displayed on all of their cars[,]" Kamal Rule 56.1 Counterstatement at 2, fails to undermine Uber's argument. To start, Kamal does not demonstrate

15

that *Singh's car*—the only vehicle relevant here—bore Uber's logo at the time of the accident. The presence of an Uber logo on other vehicles is entirely irrelevant. But even if Kamal had made such a showing, the presence of Uber's logo on Singh's car would be insufficient to create an issue of fact as to whether Singh is an independent contractor. *See, e.g.*, *Barak*, 87 A.D.3d at 957 (affirming summary judgment on independent contractor relationship where the alleged employer required all vehicles to "bear its logo").

### ii.     The Platform Access Agreement

Plaintiff also advances the following argument, which is repeated five times: "plaintiff is not a signatory to any written agreement between defendants, including any PAA, and is therefore not bound by its terms." *See* Kamal Rule 56.1 Counterstatement at 6–8.[5] While this statement is true as far as it goes—Kamal is not a signatory to the PAA—it fails to raise an issue of material fact as whether Singh is an independent contractor.

Kamal makes this counterstatement about the PAA in response to five of Uber's statements about its relationship with Singh, only some of which concern the PAA: (1) Singh acknowledged that the PAA did not establish an employment relationship; (2) the PAA stated that Uber had no right to direct or control

---

[5] Kamal's filing concludes with the counterstatement that "Uber's extensive 'background check' did not include due diligence on defendant Singh's insurer and co-defendant, American Transit Insurance, a corrupt and horribly mismanaged company." Kamal Rule 56.1 Counterstatement at 6–8. This is Kamal's response to Uber's statement that a prospective driver must "submit to a third party background check and agree to" the PAA. Any dispute as to the quality of Uber's diligence of American Transit is entirely immaterial to whether Singh is an independent contractor.

16

independent drivers; (3) Uber did not control the details of Singh's work; (4) Uber did not pay Singh a wage or salary; and (5) Uber did not own or operate Singh's vehicle, or pay for its maintenance. *Id.* Kamal's argument is simply not responsive to the statements numbered (3) through (5) above.

Putting aside this procedural issue, the fact that Kamal is not bound by the terms of the PAA—while accurate—provides no help in resisting summary judgment. The basis on which Uber seeks summary judgment is that Singh is an independent contractor. The PAA between Singh and Uber supports this conclusion, for it expressly provides that Singh is an independent contractor, not an employee. *See Rose v. Nw. Mut. Life Ins. Co.*, 220 F. Supp. 3d 363, 373 (E.D.N.Y. 2016) (finding that the existence of a contract designating a party as an independent contractor suggested the absence of an employment relationship (citing *Araneo v. Town Bd. for Town of Clarkstown*, 55 A.D.3d 516, 519 (2d Dep't 2008))). While Kamal is free to contest Uber's characterization of Singh as an independent contractor, he is not relieved of the burden imposed by Rule 56 to come forward with admissible evidence raising a material issue of fact as to whether Singh truly is an independent contractor. This he has failed to do.

### B. Uber Cannot Be Held Directly Liable Because It Did Not Own or Control Singh's Vehicle

Uber also argues that all claims of negligent ownership and operation of the involved motor vehicle must be rejected as a matter of law. Uber Mem. at 18. New York law provides that every "owner of a vehicle used or operated in this state shall be liable and responsible for . . . injuries to person or property resulting from

negligence in the use or operation of such vehicle . . . by any person using or operating the same with the permission, express or implied, of such owner." N.Y. Veh. & Traf. Law § 388(1). An owner is defined as a "person, other than a lien holder, having the property in or title to a vehicle or vessel." *Walker v. Town of Webster*, 197 A.D.3d 942, 943 (4th Dep't 2021); *see also* N.Y. Veh. & Traf. Law § 128. A certificate of title is *prima facie* evidence of ownership. *Zegarowicz v. Ripatti*, 77 A.D.3d 650, 653 (2d Dep't 2010).

Here, Uber submitted a copy of the Certified Title and Registration in Singh's name. *See* Certified Title and Registration Records, Ex. 34 to Uber Mem. While a party may rebut the inference of ownership that arises from a title or registration, *see Fulater v. Palmer's Granite Garage Inc.*, 90 A.D.2d 685, 685 (4th Dep't 1982), Kamal has made no such showing. *See Abele Tractor & Equip. Co. v. Schaeffer*, 188 A.D.3d 1500, 1503 (3d Dep't 2020) ("The presumption arising out of the certificate of title may . . . be rebutted by evidence which demonstrates that another individual owned the vehicle in question[.]" (cleaned up)).

Nor can Uber be held liable under a theory of negligent entrustment. "An owner of a motor vehicle may be liable for negligent entrustment if [they were] negligent in entrusting it to a person [they] knew, or in exercise of ordinary care should have known, was not competent to operate it." *Shepard v. Power,* 219 A.D.3d 769, 772 (2d Dep't 2023) (cleaned up). Here, Uber has established that it could not have entrusted the vehicle to Singh because it did not own or control it. *Bisono v. Taqueria*, 241 A.D.3d 484, 486 (2d Dep't 2025) (awarding summary

judgment on a claim for negligent entrustment when a plaintiff failed to raise a triable issue of fact following defendant's showing that it neither owned nor controlled the vehicle).[6] Accordingly, Uber is entitled to judgment as a matter of law for any claims of primary liability.

## IV.   CONCLUSION

For the reasons stated above, Uber's Motion for Summary Judgment, ECF No. 43, is **GRANTED**. The Clerk of Court is respectfully directed to terminate Uber from this action. Plaintiff's claims against Singh and American Transit remain and will proceed to trial. The Court will enter a separate order outlining pretrial requirements for the remaining parties.

Dated:   October 28, 2025
         New York, New York

                                            Henry J. Ricardo
                                            United States Magistrate Judge

---

[6] Some courts have held that a party that does not own a vehicle may be held liable for negligent entrustment if that party "'had control' over the vehicle and was negligent in entrusting it to one whom he knew, or in the exercise of ordinary care should have known, was incompetent to operate it." *Palacios v. Aris, Inc.*, No. 08-CV-0746, 2010 WL 933754, at *9 (E.D.N.Y. Mar. 11, 2010). This theory requires a demonstration that "the defendant. . . [has or should have] some special knowledge concerning a characteristic or condition peculiar to the [person to whom a particular chattel is given] which renders [that person's] use of the chattel unreasonably dangerous[.]" *Cook v. Shapiro*, 58 A.D.3d 664, 666 (2d Dep't 2009). Kamal has made no such showing.